Filed 3/3/22  P. v. Valencia CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B310795 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA102743) |
| v. | |
| PATRICIA VALENCIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Yvette Verastegui, Judge.  Conditionally reversed and remanded.

Sharon Fleming, under appointment by Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Mar L. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant and appellant Patricia Marie Valencia appeals the denial of her pretrial motion for mental health diversion from her criminal prosecution. She ultimately pleaded no contest to several of the charges against her and received a probationary sentence. She appeals the judgment of conviction, challenging only the trial court's denial of diversion. We conclude the trial court abused its discretion and conditionally reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Charges and Plea

On August 18, 2020, defendant was charged by information with three counts of driving a vehicle without consent (Veh. Code, § 10851, subd. (a)), one count of tampering with a vehicle (Veh. Code, § 10852), three counts of possession of burglar's tools (Pen. Code, § 466), two counts of receiving a stolen vehicle (Pen. Code, § 496d), two counts of resisting arrest (Pen. Code, § 148, subd. (a)(1)), one count of misdemeanor flight from a pursuing peace officer vehicle (Veh. Code, § 2800.1, subd. (a)), and one count of commercial burglary (Pen. Code, § 459). Broadly speaking, the charges arose from a number of auto thefts – defendant broke into and drove the victims' cars. In one instance, she fled from police. In another, she broke into an auto shop and stole vehicle keys from a key board.

She initially entered a plea of not guilty.

### 2. Defendant's Motion for Mental Health Diversion

On September 3, 2020, defendant moved for mental health diversion, pursuant to Penal Code, section 1001.36.[1] The motion

---

[1] All undesignated statutory references are to the Penal Code.

2

was supported by a psychological assessment by Catherine Scarf, Ph.D. Dr. Scarf concluded defendant met the DSM-5 criteria for the following diagnoses: Borderline Intellectual Functioning, Unspecified Schizophrenia Spectrum/Other Psychotic Disorder, Stimulant Use Disorder, and Posttraumatic stress disorder. Among other things, Dr. Scarf's report assessed defendant's amenability to treatment. This, in turn, was based on 12 predictors. A score of under 4 is excellent. A score of 11 or 12 would present "a very difficult treatment process." Defendant's score was 8, which reflects "there are many and varied obstacles to a smooth treatment process." Dr. Scarf recommended defendant for "ODR," a reference to the Office of Diversion and Reentry.[2]

---

[2] We advised the parties of our intent to take judicial notice of certain facts. Neither party objected. We take judicial notice of the following: The Office of Diversion and Reentry was created in September 2015 by the Los Angeles County Board of Supervisors. "Its mission is to develop and implement county-wide criminal justice diversion for persons with mental and/or substance use disorders, to provide reentry services based on an individual's needs, and to reduce youth involvement with the justice system." https://dhs.lacounty.gov/office-of-diversion-and-reentry/our-services/office-of-diversion-and-reentry/ [as of Mar. 2, 2022], archived at < https://perma.cc/25X6-G7NG>.

Among its programs is an ODR Housing program, offered "to serve individuals who are homeless, have a serious mental health disorder," and are awaiting a felony trial in Los Angeles County jail. The program includes "pre-release jail in-reach services, enhanced treatment efforts (additional clinical assessments and immediate initiation of medications, as indicated), and immediate interim housing upon release from jail in anticipation of

The motion was supported by a letter from the Alcoholism Center for Women, which verified defendant's acceptance into its 60-90 day residential program. Although the residential part of the program was of limited duration, the letter indicated that clients would receive "[t]ransitional planning as well as linkage to community resources when applicable."

3.  ***The Hearing and Ruling***

The court held a diversion hearing on October 5, 2020. At this point, defense counsel informed the court that defendant had three cases pending in other courts, all involving similar charges. Defense counsel represented that defendant was homeless and using the stolen cars for shelter; she committed burglaries because she was addicted to methamphetamine. Counsel suggested that if defendant had been on medication, she would not have committed any of the crimes. Counsel acknowledged, "I do want to point out that she does have a record of offenses and she was previously given a three-year prison sentence to be served in county jail, and she has come out and is back to the same type of offenses, which I think highlights the fact that she needs treatment. If we continue to, you know, send her to jail

---

permanent supportive housing. Clients in the ODR Housing program are assigned an Intensive Case Management Services provider, who works with the client as they transition from custody to community. The Intensive Case Management Services providers serve as the core point of contact for the client's medical, mental health, and other supportive services." https://dhs.lacounty.gov/office-of-diversion-and-reentry/our-services/office-of-diversion-and-reentry/jail-based-clinical-diversion-innovative-programs/ [as of Mar. 2, 2022], archived at <https://perma.cc/E5EJ-FLTS>.

with no treatment, her conditions don't just disappear. She needs medication. She needs treatment. Especially the PTSD. That's a really difficult one, as the court knows, to treat, and she's going to need some professional help. And I don't know what the correct saying is, but there's this – the definition of insanity is just doing the same thing over and over and expecting a different result. If we continue to send her into custody and not provide her the things that she needs, I can see these types of offenses continue to happen. But on the other side, if she's given the treatment and the shelter, you know, she's housed as opposed to unhoused and medicated as opposed to drug addicted, she wouldn't have any need to be committing these types of [offenses.]"

There followed a lengthy discussion, in which the court found defendant eligible, but not suitable, for mental health diversion, but suitable for ODR.

The trial court frankly admitted it had struggled with the decision. Representative of the court's reasoning was the following:

"I think that you highlighted it perfectly. And so I am struggling, because she, one, is homeless, and she has engaged in this conduct repeatedly. So she – I agree with you, this is not a situation in which she is stealing vehicles for the purpose of selling parts to make money. She is taking vehicles most likely for shelter so that she can be in a safe environment. But here, this is where the rub is, is that in each instance in which she was arrested, placed on probation where services would be available for her, she opted not to take advantage of those services, not to take advantage of anything available to her, and continued to do the same thing. And I think that you were correct, the definition

5

of insanity is doing the same thing with the expectation that there would be a different outcome. And here we can look at it in both lights. Do we basically incarcerate her with the expectation that she will change her behavior, or do we release her and expect her – that she will change her behavior and take advantage of what she had already been offered?

"And so that's where it's the rub for the court is, is that here we have a situation in which she is addicted to methamphetamine, here she is also having PTSD, which I'm sure is the reason why she self-medicates with the methamphetamine. You know, her level in terms of intellect also probably contributes. So there's all these contributing facts that the court is looking at in making a determination whether or not she is a good candidate for mental health diversion and whether or not she has the potential to succeed in mental health diversion.

"And this is my concern, and this is why I actually opted for ODR, is that mental health diversion is so fluid. It really doesn't offer any sort of structure that the court could rely on. Now, if we had a mental health diversion similar to Regional Center, where they had a case worker and that case worker worked with them, set them up, then I think that the court would feel more comfortable in relationship to public safety or the defendant's potential for success. And those are the two issues that I'm having a difficulty with, because I want – I want Ms. Valencia to succeed. And that's why, for me, I don't think mental health diversion would – even getting her into a particular alcohol center for women, as we know, many defendants, unfortunately, when given the opportunity to go into a program, walk away, not for one, maybe two, maybe three times, and that's because of variety of reasons. The addiction is too hard. The program is not

structured enough. There is no one to basically monitor her or him in order to offer those wraparound services. Because when you're in a situation in which you have all of these issues, wraparound services are needed.

"And I will say that the court has granted diversion, but the court's granted diversion when the court has felt that the defendant has wraparound services or support that the court felt confident that the person – if there was any issues, that the defendant had the ability to rely on others, family members, sponsors, someone that would assist. And here we have someone who is homeless, who is entirely left to their own devices, without anyone to provide them with the necessary tools to succeed, to address the mental health issues that have brought her before the court, to address the homelessness that has brought her before the court, to address her addiction that has brought her before the court. And so, given that she is by herself without really any means – and going to the Alcohol Center for Women is one step, but because she was placed on probation and she had the ability to do that before and was given a probation officer and didn't utilize it, I'm not convinced that she will take advantage. And that's why, for me, mental health diversion really is a good call if somebody has wraparound services that allows a defendant to succeed."

The court suggested that if defense counsel could "find something similar to the Regional Center, where it is a complete wraparound service, where she has a case worker that follows her, that meets with her, that guides her, that holds her accountable, then perhaps that would be something that the court would consider. And that's why, for me, I don't have it. And so ODR has that. So, because I'm looking at her

homelessness, because I'm looking at her challenges, because I'm looking at her meth addiction, I believe that those all are things that the court should take into consideration. The people should as well. [¶] In terms of her case, I don't think that mental health diversion offers her enough support to succeed. And that's really the motivation for the court denying the mental health diversion, because I just don't see, okay, we'll just put her in a program and hope she does better than she has in the past. I think that ODR, with the accountability, with the doctors and programs that are in place, I think that that will give her a better chance of really addressing all of the issues that brought her before the court. And that's honestly why I'm uncomfortable granting it, because I just – I don't think that there is enough support in just sending her to a program. And for me, my discretion is that I just don't want to send her to a program. I want her to actually do well. And without anything more, I don't think that, you know, that mental health diversion is the right avenue, given her set of circumstances."

After further argument, and weighing the competing factors, the court concluded that, even with two full years of diversion, defendant's lifelong problems were not sufficiently likely to be resolved to mitigate public safety concerns. The court believed defendant needed lifetime support, which could be provided by ODR, not mental health diversion. The court therefore referred defendant to ODR.

4.      ***ODR Rejects Defendant; She Finds Another Program***

Nine days later, on October 14th, defendant's counsel reported to the court that the ODR referral was rejected, "with a note saying ODR is reserving all of their spots for defendants who are exhibiting bipolar disorder symptoms or are schizophrenic."

Defense counsel continued to search for a longer program with more services than the Alcoholism Center for Women.

On November 4, 2020, defendant was accepted into the Tarzana Treatment Center, which defense counsel represented was "more in terms of full service with – we know would transition her after that first residential program, which my understanding could be up to six months longer if she needs but typically around six months, and then they transition her."

**5.**   ***The Court Denies Diversion Again***

In light of ODR's rejection and defendant's acceptance into the Tarzana Treatment Center, defendant sought to renew her motion for mental health diversion. The court initially indicated a reluctance to allow reargument but ultimately reaffirmed its finding that defendant was eligible, but not suitable, for diversion. The court specifically concluded that the new information – including defendant's admission into the Tarzana Treatment Center – did not change its earlier ruling. The court stated, "Given the facts of this case, it's appropriate to get her help in some form and some fashion. I do not feel that she is suitable for mental health diversion, although she's eligible. I don't feel that she's suitable given that her underlying issue really is substance abuse and the doctor that you had who evaluated and indicated she's difficult to treat."

The court was still open to getting defendant into a program, but declined to do so through mental health diversion. The specifics of the court's position are unclear, as the reporter's transcript omits some key words. The court volunteered, "And I have to say I do think Ms. Valencia's cases can be resolved as well. I think that these crimes are because she is homeless, seeking shelter. That is why I suggested ODR. That is why – I

9

suggested that she enter a deal with the People and get her into a program. I will be happy to (indecipherable) release her to the two programs that you found." When her counsel stated she would like to do that "today," the court stated, "I am perfectly happy to do that and perfectly happy to get her into a program (indecipherable) release her and have her monitored, have her address her substance abuse and get her on track to have her life turned around, absolutely, but it's not going to be through mental health diversion."

### 6.  *Defendant's Plea and Probationary Sentence*

On January 20, 2021, defendant and the prosecution entered into a plea agreement.[3] Pursuant to the disposition, defendant pled no contest to two counts of driving a vehicle without consent and one count of misdemeanor fleeing a police officer's vehicle. The court suspended imposition of sentence and placed defendant on probation for two years. She was to serve 440 days in jail, with credit for the full 440, and to serve 365 days "in a residential/outpatient treatment program at Tarzana Treatment Center."

### 7.  *Notice of Appeal*

Defendant filed a timely notice of appeal, seeking to challenge only the denial of mental health diversion. The trial court granted a certificate of probable cause. (See *People v. Padfield* (1982) 136 Cal.App.3d 218, 228 [the wrongful denial of

---

[3]  The prosecution had initially declined to make a plea offer that included probation. At defendant's plea hearing, the Deputy District Attorney represented "this agreement is being reached due to special directive issued by District Attorney George Gascon, and the people have no choice but to offer probation on this case that would not have otherwise been the offer."

pretrial diversion may be raised on appeal by a certificate of probable cause after a plea of guilty or no contest].)

## *DISCUSSION*

### 1. *Law of Mental Health Diversion*

The mental health diversion statute provides that "pretrial diversion" means the postponement of prosecution "subject to" a number of requirements, one of which is that "[t]he court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community." (§ 1001.36, subd. (c)(1)(B).) "The provider of the mental health treatment program in which the defendant has been placed shall provide regular reports to the court, the defense, and the prosecutor on the defendant's progress in treatment." (§ 1001.36, subd. (c)(2).)

"At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion." (§ 1001.36, subd. (b)(3).)

Eligibility encompasses six factors. "A trial court may grant pretrial diversion under section 1001.36 if the court finds: (1) the defendant suffers from a qualifying mental disorder; (2) the mental disorder was a 'significant factor' in the commission of the charged offense; (3) a qualified mental health expert opines the defendant's symptoms will respond to treatment; (4) the defendant consents to diversion and waives his

11

or her speedy trial rights; (5) the defendant agrees to comply with the treatment as a condition of diversion; and (6) 'the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' (§ 1001.36, subd. (b)(1)(A)-(F).)"[4] (*People v. Moine* (2021) 62 Cal.App.5th 440, 447-448 (*Moine*).)

If the defendant successfully completes diversion, including having in place a plan for long-term mental health care, the criminal charges shall be dismissed. (§ 1001.36, subd. (e).) However, if after diversion is granted, a qualified mental health expert concludes the defendant "is performing unsatisfactorily in the assigned program," the court shall, after notice to defendant, hold a hearing to determine whether criminal proceedings should be reinstated or treatment modified. (§ 1001.36, subd. (d)(4)(A).)

The Legislature intended the mental health diversion program to apply as broadly as possible. (*People v. Frahs* (2020) 9 Cal.5th 618, 632.)

## 2.  *Standard of Review*

"The standard of review on appeal from a trial court's denial of mental health diversion is not settled." (*Moine, supra,*

---

[4]  Section 1170.18, subdivision (c) defines "unreasonable risk of danger to public safety" to mean "an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." That clause, in turn, itemizes eight categories of offenses: sexually violent offenses, oral copulation with a child under 14, lewd or lascivious act with a child under 14, homicide, solicitation to commit murder, assault with a machine gun on a peace officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by life imprisonment or death.

62 Cal.App.5th at p. 448.) The *Moine* court reviewed the language of the statute, and concluded an abuse of discretion standard applies. (*Ibid.* See also *People v. Williams* (2021) 63 Cal.App.5th 990, 1000.) We agree that is the correct standard.

### 3.      *The Trial Court Abused Its Discretion*

This case presented the trial court with a unique factual dilemma, one with which the trial court said it struggled before reaching its decision. The defendant was, concededly, eligible for diversion. Moreover, the defendant and the offense *would have been* suitable for diversion, according to the trial court, if there had been an available program with sufficient wraparound and support services to help guarantee her success.[5]

The court sought defendant's acceptance into ODR and suggested that if there were "a mental health diversion similar to Regional Center, where they had a case worker and that case worker worked with them, set them up," it would have been comfortable granting diversion. In other words, the court's concern with defendant's suitability for diversion was not tied to defendant herself or her offenses, but the level of supervision provided by available programs. However, once the prosecutor was amenable to a probationary sentence, the court conditioned probation on defendant's participation in a residential/outpatient treatment program at Tarzana Treatment Center – the exact

---

[5]      The court also commented that it had previously granted diversion where a defendant "had the ability to rely on others, family members, sponsors, someone that would assist," whereas, here, defendant was "homeless, . . . left to [her] own devices, without anyone to provide [her] with the necessary tools to succeed . . . ." The parties do not address whether the lack of a family support network is an appropriate factor to consider in denying diversion.

same program defendant expressed willingness to take part in through mental health diversion.

We need not decide whether a trial court is required to make a separate finding of suitability for diversion beyond its eligibility finding. Even if suitability is a separate inquiry, we conclude the court abused its discretion in finding defendant not suitable.

We understand that implicit in the trial court's denial of diversion was its belief that conviction, suspended sentence, and participation in the program as a condition of probation were necessary to ensure defendant's compliance with the program, but diversion alone with its promise of dismissal of the charges (and concomitant risk of reinstatement if performance is unsatisfactory) was insufficient.

But there is nothing in the statute that allows the court to deny diversion on this basis. The court did not tie its determination that probation was necessary to any of the eligibility factors; instead it repeatedly stated defendant was eligible for diversion. The court found defendant not suitable for diversion, yet defendant's offense was suitable for diversion and the Tarzana Treatment Center program was suitable for defendant. The only basis for its unsuitability finding was the court's conclusion that the carrot of dismissal was inadequate to guarantee compliance while the stick of probation would do it.

The most recent case to address eligibility for mental health diversion is *People v. Pacheco* (2022) ___ Cal.App.5th ___ [2022 WL 453956]. There, the defendant, while under the influence of methamphetamine, set a forest fire. The trial court denied diversion, but suspended imposition of sentence and placed him on formal probation, under which he was released to a

14

mental health facility. (*Id.* at p. ___ [2022 WL 453956, *1].) Recognizing that if the defendant relapsed into drug use, he could set additional fires, the court concluded that he posed "an unreasonable risk to public safety if treated in the community without criminal conviction and supervised probation." (*Id.* at p. ___ [2022 WL 453956, *3].) On appeal, the ruling was affirmed. The trial court did not abuse its discretion in concluding defendant was ineligible for diversion, on the basis that he presented an unreasonable risk of danger (in this case, committing arson murder) if treated in the community. (*Id.* at p. ___ [2022 WL 453956, *5].) In the course of its analysis, the appellate court stated, "mental health diversion may provide some motivation for remaining drug-free and compliant with treatment for mental illness. In theory, felony probation with state prison 'hanging over his head,' will provide even more motivation." (*Id.* at p. ___ [2022 WL 453956, *4].)

*Pacheco* is distinguishable because that court tied its analysis to an eligibility factor – concluding that the extra motivation of state prison was necessary when the risk of defendant lapsing in his treatment could result in a fire causing loss of life. Thus, the defendant presented an unreasonable risk of danger unless the additional controls of probation were in place. That situation is not presented by defendant here; the court did not find that she posed "an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community."

To be sure, the *Pacheco* court stated, "mental health diversion may provide some motivation for remaining drug-free and compliant with treatment for mental illness. In theory, felony probation with state prison 'hanging over his head,' will

15

provide even more motivation." While we agree with this "theory," it would necessarily apply in every case in which diversion is under consideration. Probation always has the stick potential built into it. But the trial court did not expressly state that it was denying diversion because defendant presented a danger to the community without the structure of probation. The court expressed concern about the effectiveness of treatment and wraparound services, but subsequently conditioned probation on the same Tarzana Treatment Center treatment program that was available to defendant through diversion.

The Legislature intended mental health diversion to be applied as broadly as possible. (*People v. Frahs, supra,* 9 Cal.5th at p. 632.) We find nothing in the statute that suggests the Legislature intended to give courts discretion to deny diversion simply because diversion itself is less motivating than probation. Without any facts connecting the necessity of the additional motivation of probation to an eligibility factor, the conclusion that diversion is insufficiently motivating is simply a challenge to the underlying premise of diversion itself. The Legislature has concluded that diversion has sufficient safeguards when the defendant does not pose an unreasonable risk of danger to public safety and is otherwise eligible and suitable for diversion; courts cannot override that determination without specific facts relating to defendant.

### 4.    *Proceedings on Remand*

The court erred in denying defendant's motion for diversion. However, on January 20, 2021, defendant received a probationary sentence, including the requirement she complete 365 days in Tarzana Treatment Center. More than one year has passed; the parties have not advised us through a request for

16

augmentation or judicial notice of any information as to whether defendant successfully completed her treatment program, remains on probation, is incarcerated or her situation generally. On remand, the court shall permit defendant to vacate her plea and seek diversion.

## *DISPOSITION*

The judgment is conditionally reversed and the matter remanded for the court to allow defendant 30 days in which to move to withdraw her plea and seek pretrial diversion. If she does so, the court shall consider any intervening factors in its determination whether to grant diversion, and the views expressed in our opinion. If defendant does not move to vacate her plea within the 30 days or if the court again determines defendant should not be granted diversion, the court shall reinstate the judgment.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



MOOR, J.


17